Good morning and thank you for having us. I want to make two points before we really get into the meat of the issues. And number one is that it seems to me that the government is talking out of both sides of its hat. On the one hand they have an insider who really did something bad. An insider who knowingly told his friends non-public information about his company. That's bad. So the government gives their insider immunity, no prosecution of him, paints him as a victim, and prosecutes this case as one of misappropriation against only Eric McPhail and Doug Parigian. So I don't know. I guess they can do that. They've done it. The other point I want to make is that trading on the basis of non-public information is not a strict liability crime. So the facts of this case are very very simple. Corporate insider tells his golfing buddies non-public information. One of those is Eric McPhail. Eric McPhail in turn tells his own golfing buddies some of the on those lower down the chain? I don't think so. The government's case against both McPhail and Parigian rests on the nature of the relationship between the insider and McPhail. It rests on whether or not those two shared a relationship of trust and confidence that was legally binding. Isn't that the argument that's made that the the insider was having personal issues and he was talking with his friend and he did not assume that his friend was going to take that information and set up a network and use that information in order to make some very large returns on that information? Yes, Your Honor. The relationship between those two people. But how is somebody who's not a party to that relationship supposed to defend? Well, first of all, that person knows the information he or she is getting that they shouldn't be getting. They only know that, Your Honor, if they know the nature of the higher relationship. Isn't there a point where someone down the chain says let's better destroy the emails? Doesn't that say something about the knowledge? I'm going to get to that. Can I just finish my thought before I lose it on this issue? And that is that the third party cannot defend. This is an element of the crime, this relationship. A third party can't defend as to that element. Imagine, picture a trial where the insider is testifying about his relationship with Eric. What is pre-regent supposed to do? Well, that's true in most crimes. Most conspiracy cases, aiding and abetting cases, that's always going to be a characteristic. The issue is did he know about it? I think, as I understand your argument, you're saying one of the things that the indictment was insufficient for was that it didn't allege that he actually knew that this was material, non-public information that was shared in confidence. Yes. Before you get to that, are you challenging whether the relationship itself, even if known, could be the basis for liability? No. So your only argument is that the downstream person didn't know about the relationship, but that if he did know about the relationship, if it was alleged that he knew about the relationship, then he would be liable, in your view? If he knew the relationship was such that it was one of trust and confidence, yes. But I'm asking a slightly different question. Are you contesting whether the nature of the relationship as alleged is such that it can't count? That's an open question. No, I'm asking what you're arguing. I would say that does not suffice. That was litigated in Eric Fales' trial. I'm not prepared to really go into the specifics of what's necessary because we're focusing on whether the indictment was sufficient as to Peregian. And is the only reason you're claiming it's insufficient is because it did not allege that Peregian had enough knowledge of there being a confidential relationship? Well, if that's specifically... I'm just trying to find out what you... I can't concede that the relationship as put forth by the government was sufficient because I don't believe that friendship without something quantifiable, without a give back, is enough to satisfy the requirement. But I'm not arguing that issue today. I'm more focusing on the allegations in the indictment which allege that Peregian should have known, that he knew or should have known. Should have known is not enough. That's not the law. So if it alleged he knew, then the indictment's fine. It has to allege that he knew. If it did, the indictment's fine. So if we read the indictment to say that it alleged he knew, then it's fine. You can't read it that way. I understand that, but I'm just trying to understand, do you agree that if it alleged that he knew, then it would be fine? Well, then we get to a third way that the indictment was insufficient because the factual allocations supporting that he knew are insufficient. But with the indictment, it's indistinguishable from when a jury gets an incorrect verdict form that has two alternative theories, one which is correct, one which is not. When the jury comes back with a general verdict, you cannot say that it did not rest on the incorrect form. You've confused me with your answers to Judge Barron's questions. I thought you were arguing in your brief also that the relationship between the insider and McPhail was not sufficient because there was no expectation by the insider that he would receive some benefit. That's true as well. You've made that argument. Yes. But that would essentially wipe out the misappropriation theory. Yes, and this case started as a classical case. It alleged that the insider had received a benefit, but once Newman came out saying the benefit has to be quantifiable, the government changed its case to a misappropriation case. Well, does the benefit have to be monetary, or could the benefit be psychiatric? The theory of it being that the insider was getting help from his friend by these discussions he was having, or are you saying that... Newman says no. Newman says that's not enough. Could you address the procedural issue? Suppose we were to agree with you that the indictment was insufficient because it did not allege Santer. What happens then? We would reverse the ruling on the motion to dismiss. It would go back. What's your position then what would happen? Presumably the government might then seek to file a superseding or file a new indictment. How would that play out? My position would be that they're barred from doing so because the statute giving them the six-month safe haven to seek a re-indictment does not apply here. It doesn't save them because the original indictment was insufficient. It's not being dismissed for a violation of speedy trial, let's say. This borders, it would be in the likes of a double jeopardy claim almost. I'm not saying that's what it is, but that because it would be for insufficiency they cannot re-indict. Well play that through. I mean suppose you won the motion below when you filed it. Couldn't the government at that point have amended the indictment to allege actual knowledge? I don't know. I don't think so, but that's something I'd have to, had that happened, I certainly would have looked at that. Turning to the sufficiency of the facts supporting the allegation that Perugin knew, or should have known, the emails talk about McPhail going out with a friend. I'm going to a Red Sox game with my friend. I saw my friend last doesn't support a finding that his friend had to be a some top-level corporate insider. The indictment should have alleged that either Eric McPhail told Perugin that he was getting the inside information, but but the facts of friendship don't give rise to that. There is no duty to inquire. None. If there is to be one, that's something Congress has to put in place. If I get information from my stockbroker or stock analyst, I don't have a duty to ask whether it came from a high-level corporate insider. Absolutely not. But when you're getting a series of pieces of information, many of which turn out to be precisely accurate, and you're told to keep it quiet, couldn't a jury find that you in fact knew that this had been shared with him by an insider? Well, going back to the original problem with the indictment is that this grand jury could have found, based on that, that Perugin should have known. But you're not talking about the evidence. You're making a separate point, as I understand, that the allegations were insufficient even to establish knowledge. The reason why that is not so is, you know, I've thought about this issue in terms of willful avoidance. You know, should his little antenna have been up? Should he have dug deeper? And the answer is no, for a number of reasons. Perugin did not get the information from the insider. If he had, yes, probably he would have had a duty to make sure the information was non-public. But he's getting information from a golfing friend. Number two, the information was wrong as much as it was right. Perugin lost money. This is not the kind of information that would put a person on notice that it's coming from a high up corporate executive. It's coming from his golfing friend. And again, there's no duty, there's no duty to inquire. But even if there was a duty, what would Perugin have done? He would have said, hey, where are you getting this what he tested? We know what his testimony was from his trial, that he was getting it along with other people on the golf course. So that's all that Perugin would have gotten is that, well, Eric was getting this information same as other people. And they were doing things for McVale in response for that information he was getting. The others? No. We don't know that they did. I think there was one who did pay some greens fees. Weren't there some dinners, golf outings? Well, there was talk with regard to Perugin. The only allegation was that Perugin told Eric, I'll take you out for a nice dinner. But no allegation that he ever did. No proof that he ever did. And to the extent the government would say, well, because somebody else did that, makes Perugin criminally responsible. That can't be right. If Eric had told 100 people, and one of them took him out to dinner, then all 100 would be? That can't be right. This is severe criminal liability on a person who did not get information from an insider. You know, this whole thing started. Can I just add this on the indictment? Are you saying there's no evidence, no allegation in the indictment of Perugin having suggested that he would give a benefit? No, there is a suggestion. No allegation that anything took place. And that suggestion is the dinner? Yeah. Yeah, okay. Yeah. So this is severe criminal liability on somebody who did not get information from an insider. And it all began when somebody else in the golfing group said, hey, try this stock tip. And you know, I made money on this or something. And then Eric said, Oh, try this one. That's how it all started. So innocent. Well, but we're not concerned with how it started. We're concerned with how it played out with here's some stuff from my inside guy at the company, keep it secret. Someone else writes, be sure to destroy emails. But that's not quite so. Even if you look at it, he doesn't say this is inside information. He says, don't tell other people. Well, why would one do that? Because he doesn't want other people to know. Because he wants his friends. That's certainly ironic. If I, I want my friends to know like of a good sale or something, right. Or a good place to get cheap Celtics tickets. I'm going to tell my friends, but I'm not going to want them to tell everybody else. No, so that's not necessarily I'm just not understanding what you're arguing. I thought your argument was that he didn't know about the relationship between the insider and the alleged misappropriator. Okay. But that's not an argument about what the content of the information that was transferred from the alleged misappropriator to per region. That's just a question of whether, even though there was a misappropriation by McPhail per region knew that it was obtained through deception of the insider. That's the allegation. Okay. So the rest, I don't quite understand why, why you're arguing this, these other points. I thought the argument was that he didn't know about that relationship. Among other things. Yes, that's the strong, that's okay. So and on that score, the indictment alleges in count two that this was done knowingly and willfully. And then there is a bunch of factual detail that precedes the correct statement of the statutory elements. Okay. I suggest the indictment is sufficient as to McPhail, not as to per region. And is the reason for that because of the phrase knew or should have known? That's one of the reasons. Could you name some of the other reasons? I'm just having trouble following exactly what you're trying to get us to conclude. Because the, the factual allegations about per regions knowledge are insufficient. But what did? Because the indictment did not allege an actual benefit flowed from per region. And the strong one is as to per regions knowledge. The indictment talks mostly about McPhail and that McPhail knew he shared this relationship. But when it comes, when it gets to per region, it, it falls apart. It just says no new or should have known. Well, doesn't the indictment say that a region was aware of the relationship between McPhail and person a and knew that person a was an executive at a MSC. I don't have my indictment. What paragraph? I don't have the paragraph. That's what I don't say. I came with just, I think it does. Okay. So that, that in effect makes that allegation. They knew the relationship. If that's the case, that allegation still needs to be supported by sufficient facts and knowledge and the friendship, the friendship get togethers does not support that allegation. Thank you very much. Thank you. Thank you. May it please the court. My name is Andrew Lelling and I represent the United States. I think it's important to keep in mind that this appeal is governed by two limiting principles. The first being that we are addressing the district court's denial of a motion to dismiss the indictment. So the issue is does the indictment meet the standard for notice pleading? Does it tackle all of the elements of the given offense? The indictment here does present all the required elements of tippy liability and tipper liability, but here we're dealing with Mr. McPhail, all the elements of tippy liability and a misappropriation, et cetera, trading case. Here's what, and I think you're right on that, but this, that's my concern. I, I look at paragraph 55 where it lays out count two and the indictment properly quotes the statute and it says Parisian did knowingly and willfully blah, blah, blah. But then when you get to the facts to dispel that out in paragraph nine D on the crucial allegation, you say Parisian and others who knew or should have known that the inside information was material and non public and had been disseminated in violation of a fiduciary duty. So all the crucial center facts are alleged under the rubric of new or should have known. And when I then look at the brief that you gave the district court judge, you elaborate on that should have known to adopt the civil standard of had reason to know which the judge then has in this decision. So we've got a decision by a judge picking up on your indictment that says it's enough that someone knew or should have reason to know. Which to me is a negligent standard. I think there are a few considerations here. First, I would note that that argument was not raised below. Well, I looked at that too and it was, it was raised in a separately enumerated section of their brief entitled Sienta in mens rea. In the district court, your honor, Mr Parisian did address the issue of Sienta but did not directly address this issue of the new or should have known formulation. At least that, that's my memory of the pleadings, your honor. Perhaps more usefully, the O'Hagan decision, which is the Supreme Court seminal decision on misappropriation, liability and criminal context, uses that formulation when discussing a tippy's awareness of a tipper's breach of fiduciary duty. I will not say there was lengthy or specific discussion of it, but it does use that formulation. That formulation has then been used. So just before you go on on the merits of this thing, are you arguing that you win under a new or should have known standard or are you arguing that it was alleged that he knew? I think I'm arguing somewhere between. To answer your question, the indictment language in count two, the charging language, alleges Sienta as to every element and the government's position is that is sufficient. It is true that there are in the speaking allegations, it uses the new or should have known formulation. And what about judge stall reference language that he was aware of the relationship? Are you arguing that the speaking allegations indictment are properly read to have alleged only that he knew or should have known? That's a yes. No. Then I'm sorry. I'm going to ask you to repeat the question with respect to the speaking allegations. I understand the point about paragraph 55 and count to where it properly uses the word knowing and willfully with respect to the speaking allegations is the government's claim that the speaking allegations only refer to the region having known or should have known of the relationship or is the government arguing that the speaking allegations properly read alleged that he knew of the relationship? Oh, the left. Okay. Could you point us to where in the speaking allegations, the speaking allegations, alleged facts that region knew of the relationship as opposed to merely knew or should have known as paragraph nine puts it. Well, I, I, the issue of maybe the, uh, court use of the word relationship. I'll tell you why I said that the indictment does allege that Mr Parisian is aware that the tipper is good friends with the inside source and that the inside source is an executive at AMSC as that's as to relationship, which is, I don't think entirely the court's question as to breach of the fiduciary fiduciary like duty. The indictment says new or should have known in paragraph nine D. So as to relationship, it does specifically allege that Mr Parisian is aware of the relationship. I would argue though that legally it didn't need to say that all the indictment needed to say was that Mr Parisian knew or should have known that the tipper gave him information in breach of a duty. And so I understand what it means to say he was aware of the relationship. You mean he was aware they were friends? Yes. So if the, the speaking allegations do not allege that he was aware that the information was being conveyed, uh, on the understanding it would not be transferred. The speaking allegations do not allege that the information was conveyed from tipper to tip B. No, no. From insider to tip her. Oh, it, he says he was aware they were friends. But as I understood what you just said, the speaking allegations do not allege that Parisian knew that although there was information being conveyed from between friends, that it was understood by Parisian, that that information was being conveyed in a confidential way such that the insider would have expected it not to have been transferred. It does say that within the line, Mr Parisian received the information knowing it had been given to him in paragraph nine D that's the new or should have known. Correct. Yes. That's what I'm referring to. Okay. So the indictment first alleges the relationship between inside source and misappropriator using the language of rule 10 B five B two to establish the duty between establish a duty that misappropriator owes source. Then it goes on to discuss that the tippies involved, but you see, I guess the concern, if I understand the logic of this is that anytime somebody gets information from a friend, if I understand your theory, as long as I know that the insider was conveying information to a friend, I'm liable if I trade on that because I just should have known that the insider was conveying it on the understanding it would not be passed on. Is that, is that the government's position? Government's position is that, well, I'm going to say it twofold. One, the indictment alleges law requires, which is new or should have known. The information was conveyed in violation of a duty. But why do you say the law? You said the law requires should have known. It's sufficient. That is a formulation used in O'Hagan. But O'Hagan and footnote O'Hagan, they said it's got to be willful and know it to be a crime. The O'Hagan decision does use the formulation new or should have known, but that's what he's discussing. So Tippie's knowledge of the breach and count two in the indictment says knowingly and willfully as every element of the offense. Let me, let me ask you in the hypothetical, then let's assume we were to decide that a negligence standard isn't good enough that you've got to have knowing in the sense that you actually knew or willfully disregarded the elements that make it a crime. Is there, is there anything you point to in this complaint and the allegations in the complaint other than the recitation of the statute that would say that you've covered that element of Sienta as I just defined it? Count two says, but that's the recitation of the statute, correct? Is there any, and that may be enough. I'm not saying it isn't, but is, is there anything else when you actually cite the evidence for each element and you told the court below, we've covered each element and one of the things you pointed to was the new or should have known clause, which the court then picked up to say the indictment was adequate. Is there anything else other than 9d that covers this definition of Sienta that I'm asking you to assume? There are certain speaking allegations in the indictment that go to Mr. Sienta that the tipper conveyed the information where he wasn't supposed to. So for example, there is a paragraph that quotes an email in which someone is responding to a tip from the tipper and says, why should I trust you when, why should I use this information when you say simply, trust me, I can't divulge my info. I can't divulge where I'm getting this from.  Okay. Paragraph 15 of the indictment. But that's not from, that's not from a fail. No, it's from an individual responding to Nick fails tip.  Okay. So you have person D quoting the fail as saying, trust me, I can't divulge my info. That's correct. But he is divulging the info. That's the whole reason we're here. Well, this is a reference to Mr. McPhail, not divulging where he's getting it. He can't divulge why he thinks this is so true. But I would submit that the indictment and the law in this area to go to your point, Judge Keada, negligence obviously is not sufficient. He needs to enter, but the indictment does require C enter, meaning the defendant must trade with intent and with the knowledge that he's not supposed to be using it, which is what's alleged here. The C here's, here's the thing that the slippage, as I understand that the sec has defined in a reg relatively tightly, what counts as a confidential relationship, correct? That's correct. Okay. It does not say friends. It's something more than that. Not every friend to friend exchange, as I understand it, meets that reg. That's correct. Okay. So the worry is since that's the case, the liability has got to depend on knowledge of the confidential relationship that that reg sets forth. And what it's, and what it seems that the speaking allegations suggest is that there's knowledge of a friendship and that he should have known in consequence of that friendship that there was a confidential relationship. And that's the slippage. Why isn't the requirement that he know of the confidential relationship? I respectfully disagree. Okay. What the indictment does is tracks 10B5 2B2, which states the type of relationship required under the regulation  a history pattern practice of sharing confidences between the two men and the misappropriators aware that he's not supposed to be passing on this information. It alleges that. As to Mr. Parisian, it says knew or should have known that the information was conveyed in violation of a duty. That duty is the one in 10B5-2, a separate duty that the indictment alleges. The indictment does not allege or imply that Mr. Parisian being simply aware of a friendship between the two men is sufficient for liability. That would not be the law. What it says is he is aware or should have been aware. And I understand that that's the issue the court's focused on. Is aware or should have been aware of a breach of fiduciary or fiduciary like duty. That is the allegation in the indictment. In the misappropriation context, that fiduciary like duty is misappropriator. I guess maybe it would help me if you could explain why does the indictment include the phrase or should have known? What work is that doing? Instead of just saying he knew that he was getting the information in breach of a duty. It's there because of inconsistency. That's why it's there. The government's proof, you can even see this from the speaking allegations and the government's proof at today was that Mr. Parisian certainly knew. And in fact, let's keep in mind that Mr. Parisian pled guilty in this case, made it through a rule 11 colloquy in which he admitted to the elements of defense. So the new or should have known language is there because the regulations say it in O'Hagan says, thus it's used here. There are decisions in the fifth, sixth and seventh circuits, criminal cases, criminal insider trading cases that use that formulation. O'Hagan uses formulation. I don't want to oversell it. I can't tell you that there is specific discussion in O'Hagan about this particular aspect, but it does use that. I think that's how it has come to be used more generally in criminal cases, the insider trading context. Can I assume that if there had been a trial, you would have alleged, you would have brought in evidence as to factual scenarios, which would have shown, should have known. The evidence at trial went right to, did know, did know, did know. And in the co-defendants appeal, Mr. McPhail, that issue will come up again for the court. Your time's up, but let me ask you one more question. And it's a question I asked counsel for the appellant. If we were to reverse based, for example, on the Sienta issue, and send it back down, what happens? The government would seek a second superseding indictment. And counsel suggested there would be some impediment to your doing. Yeah, I confess I did not follow that. I'm not aware of there being an impediment. If this court were to reverse, my understanding is that the government would be free to re-indict and we would proceed. And are you aware of any timing or statute of limitations problem? Not that I'm aware of, Your Honor, though I can't tell you that I came prepared on that specific point today. Yes, Judge Stahl makes a good suggestion. If either counsel wishes to shed further light on that specific issue, both counsel has leave within 10 days to file a Rule 28-J letter within the limitations of 28-J, citing authority on that point. It's an issue of new or should have been, Your Honor? No, no, it's on the issue of if, without presuming we're going to reverse, but if we were to reverse, what happens below? Would there be any impediment to the government simply amending the indictment to delete the should have known? Thank you.